**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

| |
|---|
| **GRETA L. CAMPBELL**, <br><br> Plaintiff, <br><br> v. <br><br> **CITIGROUP**, <br><br> Defendant. |

Case No. 25-cv-3101 (CRC)

**<u>OPINION AND ORDER</u>**

Plaintiff Greta L. Campbell filed this *pro se* action against Citibank, N.A. ("Citibank") in the Superior Court of the District of Columbia.[1]  She alleges that Citibank engaged in "fraudulent billing" practices that inflated her credit card account balance and damaged her credit score. After removing the case to this Court, Citibank moved to compel arbitration of Campbell's claims.  The Court twice directed Campbell to respond to Citibank's motion, but she failed to file an opposition.  Based on the Court's own review of Citibank's motion and accompanying documentation, the Court will grant the motion and stay the case pending the completion of arbitration proceedings.

Campbell had a Staples credit card that was serviced by Citibank.  <u>See</u> Compl., Continuation of Questions ¶ 1.  Citibank closed her account in July 2023 when it discontinued the Staples credit card program.  <u>Id.</u>  Campbell alleges that after her account was closed, Citibank continued to "impose[] interest charges on purchases made" between October 2023 and

---

[1] Citibank submits that Campbell erroneously sued "Citigroup" and/or "Citi Group."  <u>See</u> Notice of Removal at 1; <u>id.</u>, Ex. 1 at 2.  For the sake of clarity, the Court refers to Defendant as "Citibank."

May 2025.[2]  Id. ¶¶ 1–2.  Because the charges "were imposed on an account that was no longer active," Campbell contends that she was "misle[d] . . . into making payments under false pretenses."  Id. ¶ 2(1).  She further submits that Citibank "reported [her] account to the credit bureau despite the charges being fraudulent."  Id. ¶ 3(1).  As a result, Campbell alleges that she was "burdened with unnecessary payments," her credit score was "negatively affected," and she suffered "significant emotional distress."  Id. ¶ 2(2)–(4).  She seeks $250,000 in damages.  Id. ¶ 2.[3]

After filing a notice of removal, Citibank moved to compel arbitration and stay proceedings pending the completion of arbitration.  Citibank submits that when Campbell applied for her Staples credit card in 2018, she received a written agreement providing that any "claims, dispute[s], or controvers[ies] . . . arising out of or related to" the account were subject to

---

[2] Campbell attached several credit card billing statements to her complaint.  See generally Notice of Removal, Ex. 1 at 19–43.  The statements reflect that she was charged *interest* on her existing account balance, but they do not show any new *charges* after the account closed.  Before closing Campbell's account, Citibank informed her that she would "continue to receive a monthly billing statement until any remaining balance is paid in full" and the "terms and conditions as detailed in [her] cardholder agreement will remain in effect for any remaining balance on [her] account."  Id. at 16.

[3] It is not entirely clear what cause(s) of action Campbell raises in her complaint.  The "information sheet" accompanying her complaint indicates that she alleges a breach of contract. See Notice of Removal, Ex. 1 at 10.  But she also attached to her complaint a "legal demand" letter that she sent to Citibank prior to filing this lawsuit; the letter asserts that Citibank's actions "appear to constitute" a variety of unlawful acts, including "[h]arrassment in violation of the Fair Debt Collection Practices Act[.]"  Id. at 14–15.  Regardless of whether Campbell brings a breach of contract claim or the claims enumerated in her demand letter, the Court is satisfied that (1) it has diversity jurisdiction over the matter, and (2) the claims would be covered by the arbitration agreement.  See Notice of Removal ¶¶ 8, 21 (representing that Citibank's main office is in South Dakota); id., Ex. 1 at 4 (Campbell's complaint listing her address in the District of Columbia); Declaration of Kyle Mitchell ¶ 1 (stating that Citibank is "located" in South Dakota); 28 U.S.C. § 1348 ("All national banking associations shall . . . be deemed citizens of the States in which they are respectively located."); Wachovia Bank v. Schmidt, 546 U.S. 303, 318 (2006) (holding that for purposes of establishing diversity jurisdiction, a national bank is located "in the State designated in its articles of association as its main office").

mandatory arbitration.  Mem. of Law in Supp. of Def.'s Mot. to Compel Arbitration and Stay Proceedings ("Def.'s Mot.") at 2; see Declaration of Kyle Mitchell ("Mitchell Decl.") ¶¶ 6–8; id., Ex. 1 ("Card Agreement") at 6–7.  It further notes that Campbell accepted the terms of the agreement by using the credit card.  See Mitchell Decl. ¶ 9; id., Ex. 2 at 3 (credit card statement showing purchase).  Because Campbell's claims "clearly fall within the scope" of the mandatory arbitration agreement, Citibank says, the Court must stay all proceedings pending arbitration.  Def.'s Mot. at 8–12.  As noted above, Campbell did not respond to Citibank's motion.

The Federal Arbitration Act ("FAA") provides that a provision in a contract requiring the arbitration of disputes related to the contract "shall be valid, irrevocable, and enforceable."  9 U.S.C. § 2.  The Supreme Court has recognized that "any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration."  Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp., 460 U.S. 1, 24–25 (1983).  If a party subject to an arbitration agreement nevertheless tries to resolve a dispute in federal court, the opposing party may petition the court "for an order directing that such arbitration proceed in the manner provided for in such agreement."  9 U.S.C. § 4.

When evaluating a motion to compel arbitration, the Court applies the familiar summary judgment standard.  Aliron Int'l, Inc. v. Cherokee Nation Indus., Inc., 531 F.3d 863, 865 (D.C. Cir. 2008).  Accordingly, the Court may look to evidence beyond the complaint and grant the motion if "there is no genuine issue as to any material fact and . . . the moving party is entitled to judgment as a matter of law."  Id. (alteration in original) (quoting Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247 (1986)); see Fed. R. Civ. P. 56(c).  In making this determination, the Court views the facts "in the light most favorable to the nonmoving party."  Chambers v. U.S. Dep't of Interior, 568 F.3d 998, 1000 (D.C. Cir. 2009).

Citibank has adequately shown that Campbell is bound by the mandatory arbitration agreement.  The evidence before the Court indicates that Campbell received the agreement when she applied for the Staples credit card.  See Mitchell Decl. ¶ 6; Card Agreement at 2.  It further demonstrates that she accepted the agreement's terms by using the credit card.  See Card Agreement at 7 (providing that enforcement of the agreement is governed by South Dakota law); S.D. Codified Laws § 54-11-9 ("The use of an accepted credit card or the issuance of a credit card agreement and the expiration of thirty days from the date of issuance without written notice from a card holder to cancel the account creates a binding contract between the card holder and the card issuer[.]"); Samenow v. Citicorp Credit Servs., Inc., 253 F. Supp. 3d 197, 203–04 (D.D.C. 2017) (recognizing that under both South Dakota and D.C. law, the use of a credit card can constitute assent to an arbitration provision in the accompanying agreement).

As noted above, Campbell alleges that Citibank breached its contract with her and/or engaged in various forms of "[u]nfair and deceptive business practices."  Notice of Removal, Ex. 1 at 14.  All of these claims relate to her contention that Citibank improperly charged interest on her remaining balance after closing her account.  See id. ("I believe that continuing to apply interest charges on purchases to a closed account is not only unfair but may also qualify as allegedly deceptive business practice."); Compl., Continuation of Questions ¶ 2 (asserting that the requested damages "reflects both the tangible financial harm caused by the fraudulent charges and the non-financial damages resulting from the emotional distress and long term consequences of [Citibank's] actions.").  They therefore fall within the scope of the mandatory arbitration agreement.  See Card Agreement at 6 (providing that Campbell or Citibank "may arbitrate any claim, dispute or controversy between [the parties] arising out of or related to [Campbell's] account" and that all claims "are subject to arbitration, no matter what legal theory

they're based on or what remedy . . . they seek" (emphasis omitted)).  Accordingly, the Court finds that Campbell entered into a valid and enforceable arbitration agreement with Citibank covering the claims in her complaint.[4]

For the foregoing reasons, it is hereby

**ORDERED** that [9] Defendant's Motion to Compel Arbitration and Stay Proceedings is GRANTED.  It is further

**ORDERED** that the Clerk of the Court shall administratively stay all proceedings in this case.  It is further

**ORDERED** that shall file joint status reports every six months, beginning on June 26, 2026, or as circumstances otherwise warrant.  It is further

**ORDERED** that the parties shall promptly notify the Court of any arbitration award.

**SO ORDERED**.

CHRISTOPHER R. COOPER
United States District Judge

Date:  April 30, 2026

---

[4] The Court will stay the proceedings in this matter rather than dismiss the case outright. See Smith v. Spizzirri, 601 U.S. 472, 478 (2024) ("When a district court finds that a lawsuit involves an arbitrable dispute, and a party requests a stay pending arbitration, § 3 of the FAA compels the court to stay the proceeding.").